(Decided 26th February, 1879.)

HAMILTON G. FANT, Receiver of the BANK OF THE VALLEY, IN VIRGINIA *vs.* WILLIAM O. SPRIGG.

*When Evidence admissible to show a Parol Agreement inconsistent with a Written Agreement not between the same Parties—Application of the Proceeds from the Sale of Collaterals, under a Parol Agreement, to a Particular Part of a Whole Debt.*

G. & Co. being indebted to the Bank of the Valley, in Va., gave to it, under a written agreement between the parties to that effect, their

four single bills of $3000 each, payable in one, two, three and four years, one of them being signed by the appellee and two others, as sureties, and the others by the two others only, as sureties. Certain collaterals enumerated in the agreement were also pledged by G. & Co., with the proviso that " in case of failure to pay the several bonds to be given for the annual payments as they shall become due, or the failure to pay the interest on the whole debt semi-annually, the bank shall be at liberty to sell the collaterals thus pledged, so that the whole of the debt and interest due to said bank be paid." The single bill signed by the appellee being due and unpaid, the collaterals were sold at public auction for the sum of $2977.20, and the appellee claimed that the entire proceeds should be applied primarily to the payment of the single bill signed by him, in pursuance of a parol agreement to that effect between the bank and him, and upon the faith of which he was induced to sign the same. In proceedings instituted by the appellee to enjoin a suit at law by the bank against him, upon the single bill signed by him and the two others, as sureties of G. & Co. HELD :

That the appellee was not precluded from showing that he was induced to sign the single bill on which the suit was brought, upon the faith of the parol agreement above mentioned, even though such parol agreement might be inconsistent with the written agreement made between the bank and G. & Co.; and that such parol agreement being satisfactorily established, the bank was bound to apply the proceeds from the collaterals to the payment of the single bill signed by the appellee.

APPEAL from the Circuit Court for Allegany County, in Equity.

The facts of the case are stated in the opinion of the Court. The appeal from the decree of the Court below, (MOTTER, J.,) was taken by Hamilton G. Fant, who had been duly appointed receiver of the Bank of the Valley, in Virginia.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, ALVEY and ROBINSON, J.

*William M. Merrick,* for the appellant.

It is submitted, that as matter of law, the alleged agreement between the bank and the appellee cannot be set up by parol evidence, for the reason that the written instruments, by fair construction, so far cover the subject-matter, that the parol agreement would vary their terms. The two papers, to wit, the agreement for the pledge and sale of the collaterals, and the note for $3000, are to be construed as one entire agreement, to which the complainant was a party. His name is explicitly mentioned as one of the proposed signers of the notes to be secured. He did sign one of them, and with the knowledge of the existence of the terms of the pledge; the agreement was produced and read in his hearing at the time, and it referred to his act of suretyship, and when he signed the note, he, by operation of law, adopted the agreement as that part of the contract made for his benefit. That being so, and the paper, in terms, conferring the power to sell at any default in the semi-annual interest of any or all the paper, and the semi-annual interest upon all and every of the notes being in default, the right accrued to sell for the payment of the whole debt, principal and interest. The right, therefore, to appropriate to the whole debt, and to the whole interest upon all the notes, was given by the written agreement, to which Sprigg was a party. Is not a parol contemporaneous agreement to dedicate the collaterals to a particular part, inconsistent with the right thus conferred, and if inconsistent, can parol evidence be allowed to vary the instrument?

Now, it must be remembered, that there are other rights, beside those of Sprigg and the bank and the original debtors, involved. It is in proof, that besides Pancoast, George Keiter is a surety upon the other notes, and Sprigg is not, and to the extent that Sprigg obtains total exemption, to that extent does he deprive Keiter of the claim for contribution which he might have against Sprigg, if

the collaterals went in just proportion to the liquidation of the other notes on which his name appears, and Sprigg's does not appear. By the written contract, the creditor has the right to apply the collaterals to all or any of the notes, principal or interest, at pleasure. By the alleged parol contract his liberty is restricted and confined to the extinction of the first note in case of deficiency. It would seem that a statement of these legal consequences brings the case within the rule of exclusion, laid down in *Fustings vs. Sullivan*, 41 *Md.*, 167, and puts it outside *Basshor & Co. vs. Forbes*, 36 *Md.*, 154.

*Carroll Sprigg* and *John K. Cowen*, for the appellee.

The evidence proves conclusively that an agreement was made between the appellee and the bank, whereby the bank agreed that if he, Sprigg, would become surety on the first bond of Gill, Hardman & Stephens for $3000, the bank would apply the proceeds of the collaterals pledged to it by the principal debtors, *first*, to the payment of this bond. On this condition, and with this understanding, Sprigg became a surety, and he would not have become surety unless the bank had assented to this condition, and made this agreement. This agreement is valid, because the parties to it, viz., Sprigg and the bank, were competent to contract. There was a valuable consideration for the agreement; viz., the becoming surety on the bond to the bank; and the agreement does not contravene the rule of law, that a contemporaneous parol agreement cannot be set up to contradict the terms of a written instrument. The parol agreement set up in this case is not between the same parties as those making the written contract. The parties to the latter are the bank and Gill, Hardman & Stephens; the parties to the former are the bank and Sprigg. Why could not the bank agree with Sprigg that if he would become surety on the first bond, it would apply such collaterals as were received first

to the payment of that bond? That the bank made such agreement is clear; and that by this promise and agreement, it secured Sprigg's obligation as surety is equally clear. If, now, the bank can claim it is not bound by this promise and parol agreement, it is a fraud upon the appellee, and he should be relieved entirely from his obligation of suretyship. One promise was the consideration for the other; and if the bank should be relieved from its agreement, Sprigg should be also relieved from his obligation; and, therefore, the entire bond should be cancelled, and the appellant be enjoined from prosecuting a suit thereon for any sum whatever. The parol agreement between Sprigg and the bank refers to a collateral fact not expressly provided for in the written agreement, *i. e.*, the *order* in which the proceeds of the collaterals shall be applied to the satisfaction and payment of the several bonds secured by their pledge.

As to the suggestion of the appellant's counsel, in his brief that other rights than those of Sprigg and the bank and the original debtors, are involved, viz., those of Pancoast and George Keiter, we reply that the evidence shows that all the parties to the bonds were present, and cognizant of the arrangements made between Sprigg and the bank when made.

The appellee cited the following authorities. *Neidig, Adm'r vs. Whiteford,* 20 *Md.,* 178; *Calvert vs. Carter,* 18 *Md.,* 84–110; *Allston vs. Contee,* 4 *H. & J.,* 351; *Dorsey vs. Gassaway,* 2 *H. & J.,* 402; *Chicago vs. Sheldon,* 9 *Wall.,* 54; *Taylor on Evid., sec.* 1149; *Grove, Trustee vs. Reutch,* 26 *Md.,* 378; *Fustings, Adm'r vs. Sullivan,* 41 *Md.,* 162; *Paul, et al. vs. Owings,* 32 *Md.,* 402.

ROBINSON, J., delivered the opinion of the Court.

This bill is filed by William O. Sprigg, to enjoin a suit at law, brought by the Bank of the Valley, in Virginia, on a single bill for $3000, signed by him and others as sureties for the firm of Gill, Hardman & Stephens.

It appears that in September, 1855, Gill representing the firm of Gill, Hardman & Stephens, in company with Sprigg the complainant, went to Romney, Virginia, for the purpose of adjusting an indebtedness due by said firm to the bank.

After a conference between Gill and the officers of the bank, an agreement was executed between Gill, Hardman & Stephens and the bank, whereby the former were to give to the bank, four single bills of $3000 each, payable in *one, two, three and four years,* one of the single bills to be signed by Sprigg, the complainant, and Samuel A. Pancoast and George Keiter as sureties; and the remaining three by Pancoast and Keiter. Certain collaterals enumerated in the written agreement were also pledged by Gill & Co., with the proviso, that "in case of failure to pay the several bonds to be given for the annual payments as they shall become due, or the failure to pay the interest on the whole debt semi-annually, the bank shall be at liberty to sell the collaterals thus pledged, so that the whole of the debt and interest due to said bank be paid."

The single bill signed by Sprigg, the complainant, being due and unpaid, the collaterals were sold at public auction for the sum of $2977.20; and the bank claims the right under the written agreement, to apply the same at *its discretion* to the several single bills mentioned in said agreement.

The complainant on the other hand claims, that the entire proceeds shall be applied *primarily,* to the payment of the single bill signed by him as surety of Gill & Co. in pursuance of an *agreement between the bank and himself,* and upon the *faith of which he was induced to sign the same.*

Conceding then, that according to the legal construction of the written agreement, the bank would have the right to apply the proceeds from the collaterals to the

payment of either, or to all the single bills, the question is, whether it is competent for the complainant to set up a *parol agreement* between the bank and himself in regard to the application of such proceeds, inconsistent with the written agreement? As between the parties to a written agreement, parol evidence as a general rule is inadmissible to contradict or vary the terms of the instrument. Here however, it is admitted that the complainant was not originally a party to the agreement of September 19th; but the argument is, that having been read in his presence, if he afterwards signed the single bill, he must be presumed to have assented to the application of the proceeds from the collaterals, according to the terms and stipulations of said agreement. One, it is true, may assent to and be bound by the terms of a written agreement, although the same may not be signed by him. But if it is proposed to make the complainant a party to the written agreement between the bank and Gill & Co., on the ground that he signed the single bill with knowledge of the contents of the agreement, it is surely competent for him to prove that although the agreement was read in his presence, he refused to sign the single bill, unless the bank would agree to apply the collaterals *primarily* to the payment of said single bill. Such an agreement it is true, may be inconsistent with the written agreement between the bank and Gill & Co., but then the complainant was not a party to that agreement, and the evidence offered by him shows that he never assented to it. In no sense can it be said that such evidence is liable to objection on the ground that it contradicts the terms of a written agreement, because such an objection could apply only to the parties to the agreement.

But then again it is argued that the sureties on the three other single bills may have the right to insist upon the application of the proceeds of the collaterals according to the terms of the written agreement. We are not to be understood as expressing any opinion in regard to

their rights. As between *them and the bank*, it may be true, that no parol agreement between the bank and the complainant could affect their rights under the written agreement by which the collaterals were pledged. They, however, are not parties to this suit. The controversy here is between the bank and the complainant, and *the question is, whether as between them*, the complainant is precluded from showing that he was induced to sign the single bill on which the suit was brought, upon the faith of an agreement with the bank that certain collaterals held by it should be applied *primarily* to the payment of said single bill, even though such parol agreement may be inconsistent with the terms of a written agreement made between the bank and other parties? And we are of opinion that he is not.

Such evidence proves a distinct and independent agreement between the bank and the complainant, and it is by this agreement that the rights of the parties to this suit are to be determined.

If so, the only question is, whether this parol agreement is satisfactorily established?.

And in regard to this, Mr. Gill says:

"That although Mr. Sprigg was requested to sign one of the three other notes, he refused to do so, stating as a reason that if the collaterals were forced to a sale they might be exhausted before such notes were reached."

The witness, Pancoast, states: "That Sprigg refused to sign any other than the first note maturing, saying at the time that the collaterals might be exhausted and leave him in the lurch."

Mr. Sprigg, the complainant, testifies, that:

"In the afternoon he was sent for to come to the bank; he went and was somewhat surprised to find upon hearing the written agreement read, that he was again asked to become liable for Gill, Hardman & Stephens. That he was indignant and spoke of the manner in which he had

Fant, Receiver *vs.* Sprigg.

been treated. The note handed to him by the president of the bank was the one drawn at four years after date. After a good deal of discussion he was persuaded to sign the note drawn at one year, upon the assurance that the securities were ample under any circumstances to cover that. He refused to sign the note at four years because the collaterals might be exhausted before it would become due; and it was distinctly understood that the collaterals · should be first applied to the note which he signed."

Upon this testimony we are of opinion that the agreement relied on by the complainant is satisfactorily established; and that under it the bank is bound to apply the proceeds from the collaterals to the payment of the single bill signed by him.

As thus applied, the complainant is indebted to the bank in the sum of $364.78, with interest from August 13th, 1857.

For these reasons the decree below ascertaining this sum to be due by the appellee, and enjoining the appellant from prosecuting a suit at law to recover any greater sum, will be affirmed.

> *Decree affirmed, and*
> *cause remanded.*

(Decided 26th February, 1879.)